# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LaSEAN JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:17-CV-0057-GCS |
| | ) |
| JOHN BURROW, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant John Burrow's motion for summary judgment (Doc. 90). Specifically, Burrow contends that he is entitled to summary judgment because Jackson cannot prove that he was personally involved in any alleged violation of Jackson's constitutional rights. Jackson counters that there are genuine issues of material fact that preclude summary judgment (Doc. 97). Based on the record, the applicable law and the following, the Court **DENIES** the motion.

Plaintiff LaSean Jackson, an inmate incarcerated at Menard Correctional Center ("Menard"), filed this action for violations of his civil rights pursuant to 42 U.S.C. § 1983 (Doc. 1). Jackson alleges that his Eighth and Fourteenth Amendments rights were

violated during a strip search and cell shakedown conducted by the Orange Crush Tactical Team ("Orange Crush") at Menard on April 1, 2016. On March 8, 2017, Jackson was allowed to proceed on two claims: an Eighth Amendment claim against Defendant John Doe for subjecting him to a humiliating and abusive strip search and escort during the Orange Crush's shakedown of Menard's East Cell House on April 1, 2016; and an Eighth Amendment claim against Warden Kimberly Butler and Director of the Illinois Department of Corrections John Baldwin for condoning and/or approving the Orange Crush's policies, practices, or customs and for failing to intervene and stop the deprivation of his constitutional rights on April 1, 2016 (Doc. 8). Thereafter, on December 28, 2018, Jackson, by and through court appointed counsel, filed a First Amended Complaint against only John Burrow alleging an Eighth Amendment claim for the strip search that occurred on April 1, 2016 (Doc. 79).[1]

As the motion for summary judgment is ripe, the Court turns to address the merits of the motion.[2]

## FACTS

The following facts are taken from the record and presented in the light most favorable to Jackson, the non-moving party, and all reasonable inferences are drawn in

---

[1] On September 20, 2018, the parties filed a Rule 41(a)(1)(A)(ii) stipulation for dismissal without prejudice as to the claims against Butler, Baldwin and Lashbrook (Doc. 62). The stipulation also noted that the claims against Burrow would remain pending.

[2] On April 12, 2019, this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, was referred to the undersigned for final disposition on the case (Doc. 99).

his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On April 1, 2016, Jackson was housed at Menard in the East Cell House, ten gallery, cell 20. Jackson's cellmate was Daniel Amaya. There are 25 cells on ten gallery in the East Cell House at Menard. Each cell holds up to two inmates.

On April 1, 2016, there was a tactical shakedown of the East Cell House at Menard. During the shakedown of Jackson's gallery, there were several tactical team officers on the gallery, with approximately two officers at every cell. During the shakedown, the inmates on Jackson's gallery were strip searched by tactical team officers. After the strip searches were completed, the inmates on Jackson's gallery were dressed, handcuffed and ordered to exit their cells. Once all the inmates on Jackson's gallery were out of their cells, the tactical team officers escorted them off their gallery, down the stairs, and out of the East Cell House and over to the chapel.

The inmates from the East Cell House remained in the chapel for about an hour and half to two hours. During this time, the tactical officers conducted searches of the cells of Jackson's gallery. After the tactical team officers finished searching the cells, Jackson and the other inmates were escorted from the chapel back onto their gallery and into their cells. Once the inmates were back in their cells, the handcuffs were removed, their cell doors were closed, and the tactical team officers left the gallery.

Jackson alleges that during the strip search on April 1, 2016, while he was naked, he was instructed to bend over at the waist and spread his butt cheeks. Jackson claims that after he complied with the order to spread his butt cheeks, an officer blew air into

his anus. Jackson does not know why the officer did that. Jackson also claims that while he was being escorted back from the chapel to his gallery, the officer grabbed his butt and said, "nice ass." Jackson further claims that after he got back to his gallery, the officer grabbed his penis and called him a "faggot."

After the incident, Jackson complained about the alleged misconduct to staff at Menard. Menard Lieutenant Whitley issued a Report after interviewing Jackson and Burrow. (Doc. 64-2). Lieutenant Whitley reported the following:

> On April 5, 2016, an administrative interview was conducted with offender JACKSON. During the interview offender JACKSON stated on April 1, 2016 he was in the East house during the tactical shakedown. JACKSON states his cellmate was getting strip searched and the tactical team was going through the procedure. JACKSON stated while his cellmate was getting strip searched he heard a blowing sound. JACKSON stated the tactical team told his cellmate to bend at the waist and spread his "ass cheeks." JACKSON stated the same thing happened to him while he was strip searched. JACKSON stated the tactical team officer who searched him was not black; he was white, Hispanic, or Asian. JACKSON stated on the way back from chapel his shirt was untucked and while he was walking up the steps a tactical officer started tucking his shirt in and while he was doing this the officer grabbed his butt and said, "nice ass." JACSKON stated that once he got to 10 gallery a tact officer reached over, grabbed his penis, and then called him a "faggot." JACKSON stated he does not know the ethnicity of the officer. JACKSON stated he was scared to bring this up until his cellmate came forth and explained that something happened to him, so he came forth and wrote a grievance (Attachment # 3).
>
> A DCA 30580 was completed which showed that Correctional Officer JOHN A. BURROW, who is employed at Pinckneyville Correctional Center, searched the cell of the offender JACKSON (Attachment # 4).
>
> On April 5, 2016, an administrative review was conducted [and] Correctional Officer Burrow was interviewed. During the interview . . . BURROW stated he reported to Menard Correctional Center on March 31, 2016 and April 1, 2016 as a member of the Pinckneyville Correctional Center tactical unit. BURROW

stated he performed searches in both the East and West cell houses on these dates. BURROW stated the offenders were strip searched prior to leaving their assigned cell and being escorted to the chapel. BURROW stated the offender he strip searched and escorted out of the cell is not necessarily the same offenders' cell that he searched. BURROW stated he denies any allegation that he touched any offender improperly on the dates he was at Menard. BURROW stated he did not grab the buttocks or genitals of any offender at Menard Correctional Center on March 31, 2016 and April 1, 2016. BURROW stated he does not recognize a photo shown to him of offender JACKSON (Attachment # 5).
…

The report concluded: "Based on the lack of direct evidence, conflicting witness statements, the allegations of sexual assault/PREA are unsubstantiated. This case was concluded on April 7, 2016 and is closed." (Doc. 64-2). Jackson disagrees with the report's conclusion.

Jackson never saw the officer who conducted the strip search before April 1, 2016. The tactical team officers all wear the same orange jumpsuit, black vest, black boots, black gloves and a helmet with a clear mask covering the face. None of the tactical team officers were wearing tags or badges. Jackson could not determine the hairstyle, facial hair, tattoos, or other visual identifying marks of the officer who conducted the strip search. Jackson is not 100 percent sure that it was Burrow that stripped searched him and escorted him back to the gallery. Jackson testified that the officer was a white male approximately 5 foot 8 inches, medium size build, 150 pounds. Burrow is 5 foot seven inches and 170 pounds. Jackson testified that he would be able to identify the officer that assaulted him by voice. Jackson had never heard of Burrow until he received his name in discovery during this litigation.

Burrow currently works as an Illinois State Police trooper. Formerly, Burrow was a correctional officer with the Illinois Department of Corrections from August 2013 until June 2017. During this time, Burrow worked at Pinckneyville Correctional Center ("Pinckneyville"). Occasionally, Burrow would go to other correctional facilities to conduct tactical shakedowns as a member of the tactical team. Burrow conducted about six or seven tactical shakedowns at Menard.

Burrow participated in the tactical shakedown of Menard on April 1, 2016. The record reveals that Burrow completed a search of Jackson's cell that day, while Jackson was in the chapel. Burrow does not recall specifically anything that happened that day. The tactical team officers do not fill out any kind of documentation to show which inmates that they strip search during a tactical operation. Burrow does not know what cell on Jackson's gallery he conducted a strip search of on April 1, 2016. Burrow has seen photographs of Jackson; but does not recognize Jackson.

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. PROC. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Celotex*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support that assertion by citing to particular materials in the record or by showing that the materials in the record do not establish the absence of a genuine dispute. *See* FED. R. CIV. PROC. 56. If the non-moving party does not show evidence exists that would reasonably allow a fact-finder to decide in its favor on a material issue, the court must enter summary judgment against the non-moving party. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)(quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

## ANALYSIS

To prove liability under § 1983, Jackson must show that Burrow "caused the deprivation" of his federal right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014)(stating that "§ 1983 requires that a defendant be personally involved in the alleged constitutional deprivation."). Burrow moves for summary judgment, arguing that, despite an alleged constitutional violation, Jackson cannot show that he was personally involved in the April 1, 2016 incident.

"[T]o be liable under §1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'" *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)(quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). The plaintiff must demonstrate a casual connection between (1) the sued officials and (2) the alleged misconduct. *See, e.g., Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)(stating that "Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.").

Burrow relies heavily on *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017). In *Colbert*, the plaintiff sued a number of officers under Section 1983 for damaging his property while conducting a search of his residence. *Id.* at 657. The Seventh Circuit granted summary judgment for the defendants because the plaintiff could not satisfy Section 1983's personal responsibility requirement. *Id.* The Seventh Circuit reasoned that the accused officers had denied responsibility and that the plaintiff admitted that he was unable to identify which of the ten officers had caused damage to the property. *Id.* The plaintiff further acknowledged that he could not make such an identification because he was not allowed in the rooms while the officers conducted their search. *Id.*

*Colbert*, however, is distinguishable from the facts of this case. Unlike *Colbert*, Jackson physically described the officer involved as physically similar to Burrow.

Moreover, Jackson was physically present while the alleged constitutional violations occurred, and as a result Jackson testified that he can identify the voice of the officer involved. Finally, Jackson noted that the same officer who conducted the strip search also escorted him from the cell.

Clearly, there are genuine issues of material fact in dispute. This is a classic "he said, she said" case which boils down to a credibility determination which must be decided by a jury. Burrow testified that the inmate he strip searched and escorted out of the cell to the chapel is not necessarily the same inmate who's cell he searched. However, Burrow also testified that it is possible that the inmate he strip searched is the same inmate who's cell that he searched. Burrow also testified that he does not recall specifically anything that happened that day; that he has never intentionally blown air into an inmate's anus during a strip search and that he never grabbed an inmate's butt or genitals during a tactical operation.

On the other hand, Jackson testified that the same officer who conducted the strip search also escorted him from the cell to the chapel. Moreover, Jackson testified that he remembers the voice of the officer involved. The record reflects that Burrow was working on the tactical team on April 1, 2016, and that Burrow completed the shakedown of Jackson's cell while the inmates were in the chapel. The record also reflects that Burrow closely fits the physical description of the person Jackson identified as the officer that violated his constitutional rights. Lastly, the record reveals that the tactical team officers do not fill out any documentation to indicate which inmates the tactical team officers strip

search. While admittedly the direct evidence appears to be thin, the Court must view the evidence and make all reasonable inferences in the light most favorable to Jackson. As such, the Court concludes that a reasonable jury could find that Burrow was in fact the officer that violated Jackson's rights on April 1, 2016.

## CONCLUSION

Accordingly, the Court **DENIES** Defendant John Burrow's motion for summary judgment (Doc. 90). The Court **SETS** this matter for telephonic status conference on **January 23, 2020 at 10:30 a.m.** to discuss whether a settlement conference would be beneficial (including the possibility of the parties consenting to the settlement conference before the undersigned) and possible trial dates. Instructions for the conference call are as follows: (1) call toll-free, 888-273-3658 (2) when prompted, enter the seven-digit Access Code: 5699758; (3) when prompted, enter the four-digit Security Code: 0057.

**IT IS SO ORDERDED.**

Date: January 14, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.01.14 15:04:18 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**